UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| VUONGKHANG LUONG, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | |
| CITY OF WOODSTOCK, GA and | ) | **DEMAND FOR JURY** |
| | **)** | **TRIAL** |
| CHIEF CALVIN MOSS, in his Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff VuongKhang Luong files this Complaint for Equitable Relief and Damages against Defendants City of Woodstock, GA and Police Chief Calvin Moss, in his individual capacity, showing the Court as follows:

### INTRODUCTION

1.     This is a civil rights action to redress the deprivation of rights guaranteed by the Constitutions and laws of the United States and the State of Georgia.

2.     Pursuant to the City of Woodstock Police Department's Substance Abuse Policy, the defendants have unlawfully based employment decisions upon the results of a flawed, imprecise, unreliable, arbitrary, and racially biased

1

mandatory drug test performed on hair samples (the "Hair Test").

3.    The plaintiff has no objection to the concept of the mandatory drug-testing of law enforcement officers and applicants for employment as law enforcement officers.

4.    Plaintiff contends, however, that the Defendants' use of the Hair Test is unlawful because, among other reasons, it: (a) has a disparate, adverse, and discriminatory impact on police officers and applicants of color, and (b) is used despite the availability of alternative testing methods and procedures that would have less disparate, adverse, and discriminatory impact on police officers and applicants of color.

5.    Upon information and belief, there are currently no government-mandated Guidelines for testing hair samples for the presence of illegal drugs.

6.    Nor are there such guidelines concerning collection procedures or cut-off levels for the Hair Test used by the defendants.

7.    In addition, scientific studies demonstrate that the procedures used by the Defendants to test hair samples for the presence of illegal drugs are flawed, imprecise, arbitrary, unreliable, and inherently biased against people of color.

8.    For example, upon information and belief, the procedures and methods used in performing the Hair Test cannot identify whether a result that is positive for the presence of illegal drugs is due to ingestion or to external contamination from

environmental exposure.

9.      In addition, the Hair Test has an inherent propensity to yield false positives on hair samples taken from persons of color because of the composition of the hair itself and other factors.

10.      Indeed, upon information and belief, the Society of Forensic Toxicologists considers the testing of hair samples for the presence of illegal drugs to be too unreliable to be used in making individual employment decisions.

11.      Plaintiff is a former Woodstock police officer.

12.      Plaintiff was wrongfully terminated on the basis of his allegedly positive result on the Hair Test.

13.      Plaintiff vehemently denies using illegal drugs.

14.      Plaintiff's allegedly positive results on the Hair Test is the only "evidence" of illegal drug use by Plaintiff that was considered by Defendants in making their adverse employment decision against him.

15.      Defendants' use of the Hair Test in making employment decisions disproportionately and adversely impacts police officers and applicants of color and constitutes unlawful discrimination on the basis of race.

16.      Because of Defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions,

Plaintiff has been terminated from his employment with the Woodstock Police Department.

17.     The result is the ruination of the life, career, and reputation of Plaintiff.

18.     Among the damages that Plaintiff has suffered and continues to suffer because of Defendants' policies, customs, practices, and conduct are, without limitation, loss of compensation, benefits, seniority, and employment opportunities, lost career, damaged reputation, loss of standing in the community, humiliation, mental pain, anguish, and severe emotional distress.

## JURISDICTION AND VENUE

19.     Plaintiff's civil rights claims are based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and the Fourteenth Amendment to the United States Constitution.

20.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

21.     This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.     Mr. Luong filed a timely Charge of Discrimination within 180 days of

his termination complaining of the discriminatory actions challenged in this Complaint.

23.     The EEOC issued Mr. Luong a Dismissal and Notice of Rights.

24.     This civil action is filed in the appropriate federal district court within ninety (90) days of the receipt of Mr. Luong's Dismissal and Notice of Rights

25.     Plaintiff has exhausted the necessary administrative prerequisites to filing this lawsuit.

### THE PARTIES

26.     Plaintiff Luong is an Asian male, citizen of the United States, and a resident of the State of Georgia.  Mr. Luong submits himself to the jurisdiction of this Court.

27.     Defendant City of Woodstock ("City") is a municipality of the State of Georgia and owns, operates, manages, controls, and is responsible for the actions of the Woodstock Police Department.

28.     The City may be served with process through the Mayor of Woodstock, Donnie P. Henriques at the Woodstock City Hall – Annex, 12453 Highway 92, Woodstock, Georgia 30188.

29.     The City is an "employer" within the meaning of 42 U.S.C. § 2000e and is subject to suit under all claims alleged in this Complaint.

30.     Defendant Moss is a resident of the State of Georgia and is subject

to this Court's jurisdiction.

31.    Defendant Moss may be served with process at his place of employment, Woodstock City Hall – Annex, 12453 Highway 92, Woodstock, Georgia 30188.

## FACTUAL ALLEGATIONS

32.    Plaintiff joined the Woodstock Police Department on September 13, 2018 and provided approximately one year of service until he was wrongfully terminated on or about October 14, 2019.

33.    Officer Luong had an excellent service record that was free of warnings or disciplinary actions related to drug abuse.

34.    Plaintiff had taken and passed a mandatory drug test in July 2019 prior to the Hair Test upon which his termination was based.

35.    On or about June 21, 2019, Plaintiff went on a bachelor trip.

36.    In early July of 2019, Plaintiff was involved in an on-duty car accident.

37.    Due to the accident, Plaintiff was required to take a urine drug test; which returned negative results.

38.    In May, July, and August of 2019, Plaintiff was involved in several cocaine related arrests.

39.    In the July arrest, Plaintiff found cocaine inside a purse along with several thousand dollars, which he seized, and hand counted twice per department

policy.

40.     Plaintiff does not remember if he wore gloves to count the currency.

41.     Sometime after August 23, 2019, Plaintiff seized cocaine from a car and conducted a thorough search of the car to determine if there were any other narcotics hidden within the car.

42.     On or about August 23, 2019, Plaintiff was asked about "illegal drug use during a bachelor party in Las Vegas", but the bachelor party occurred in New Orleans.

43.     The Department then asked if Plaintiff used any illegal drugs in New Orleans and Plaintiff responded that he did not.

44.     The Department requested Plaintiff take a drug test the next day, but Plaintiff insisted he take a drug test "right now".

45.     Plaintiff took a hair test that day.

46.     As part of the hair test, a technician removed hair from numerous portions of Plaintiff's scalp at different lengths and placed all the hair into a single envelope.

47.     The lab then informed Plaintiff that his result was positive, and Plaintiff relayed that information to the Assistant Chief of Woodstock Police Department.

48.     The Assistant Chief told Plaintiff that he could be re-tested via a "split sample test"; however, there was only one sample to be tested due to all of his hair

being placed in the same envelope.

49.    Plaintiff was informed that the results of the second test were "confirmed"; in fact, the numbers on the second test were the exact same as the numbers on the first test.

50.    The City admitted, "[i]t should not have been listed as a split sample because they did not take it like a urine sample where they collect it in two different samples."

51.    After deciding to terminate Plaintiff, the City confirmed that it was impossible to do a split sample for hair and that the second test was simply a retesting of the first sample.

52.    After the second test, Plaintiff had a final meeting with Chief Moss, during which, Plaintiff explained that hair tests have issues relating to reliability regarding false positives and showed Chief Moss research concluding that Asian hair, being black and having higher amounts of melanin, tends to return a result "tenfold" due to the way cocaine binds to his hair which could result from environmental exposure not ingestion.

53.    Plaintiff also reiterated his encounters with cocaine while performing his duties as a police officer.

54.    At no point during the investigation was Plaintiff offered a blood or urine test by the Department.

55.   Plaintiff was terminated from the Department on October 14, 2019.

56.   Plaintiff was hired by a new employer on December 1, 2019, and as part of his onboarding, was required to take a drug test which came back negative.

57.   Plaintiff timely appealed to City Manager who upheld the Police Department's decision to terminate despite being provided expert testimony and scientific research showing that environmental exposure cannot be excluded as a source of positive results with regard to hair sample tests.

58.   Plaintiff timely appealed the City Manager's decision on December 18, 2019 and at a January 13, 2020, Council meeting, the Council decided not to hear Plaintiff's appeal. Plaintiff timely appealed the City Council's decision to the Superior Court of Cherokee County through a Petition for Writ of Certiorari.

## PROBLEMS WITH THE HAIR TEST

59.   According to Defendants, Plaintiff tested positive for cocaine on an initial Hair Test and a follow-up re-test.

60.   Plaintiff had an excellent service record during his employment with the Woodstock Police Department and had not previously been the subject of a past complaint for behavior indicative of illegal drug use.

61.   For several years prior to the Hair Test that precipitated his wrongful discharge, Plaintiff had submitted to mandatory monthly or bi-monthly drug tests while working for the military.

9

62.    All these previous tests had been negative, and Plaintiff vehemently denies using illegal drugs.

63.    Plaintiff obtained results negative for the presence of illegal drugs in an independent test performed soon after the allegedly positive Hair Test results were reported.

64.    Defendants have failed and refused to consider independent tests indicating that Plaintiff was drug-free at the time of the Hair Test that falsely and erroneously indicated illegal drug use.

65.    Upon information and belief, there are currently no government-mandated guidelines for testing hair samples for the presence of illegal drugs.

66.    Nor are there such guidelines concerning collection procedures or cut-off levels for the Hair Test used by the defendants.

67.    Although the FDA has approved other methods of testing for the presence of illegal drugs (using blood and urine), upon information and belief, the FDA has not approved the procedures used by Defendants to test hair samples for the presence of illegal drugs.

68.    Upon information and belief, the Society of Forensic Toxicologists considers the testing of hair samples for the presence of illegal drugs to be too unreliable to be used in making individual employment decisions.

69.    Upon information and belief, Defendants had knowledge that the

reliability of the procedures they had chosen to use for the Hair Test was questionable.

70.     Defendants nevertheless continue to use the Hair Test, administered in the same way, performed and interpreted by the same laboratory, and with the same disparate, adverse, and discriminatory consequences for officers and applicants of color in the terms and conditions of their employment.

71.     The Hair Test is rife with flaws.

72.     For example, Defendants have failed to ensure that personnel responsible for collecting the hair samples and transmitting them to the lab are sufficiently trained to follow the procedures necessary to ensure the integrity of the hair samples used in the Hair Test and that the hair samples provided are of sufficient length and quantity to comply with the testing protocol.

73.     The Hair Test is unreliable, imprecise, and arbitrary.

74.     Scientific studies have demonstrated flaws in the procedures used to test hair samples for the presence of illegal drugs and the hair drug test's inherent bias against people of color – i.e., the propensity of the test to yield false positives, specifically higher valued false positives, on hair samples taken from persons of color.

75.     Upon information and belief, results obtained by laboratory analysis of the same hair sample can vary by more than 40 percent.

76.     Upon information and belief, Defendants are aware of these studies but refuse to take remedial steps.

77.     Although a disproportionate number of officers and applicants of color are being adversely affected by the Hair Test in the terms and conditions of their employment, Defendants will not suspend or modify its use in making employment decisions.

78.     The Woodstock Police Department refuses to acknowledge that hair samples used in the Hair Test may be contaminated from external exposure, as might occur, for example, during the performance of job duties, personal grooming such as running one's hands through or over their hair, as a result of unsanitary collection, transmission, preparation, or testing procedures, or because of errors in the chain of custody.

79.     Defendants afford no meaningful opportunity for an officer or applicant who allegedly tests positive on the Hair Test to prove his or her innocence with respect to alleged illegal drug use.

80.     Despite scientific evidence and sworn expert testimony demonstrating the unreliability of procedures used to test hair samples for the presence of illegal drugs and the hair drug test's inherent bias against people of color, the Woodstock Police Department refuses to give sufficient credence and weight to the affected officer's or applicant's record, even when the record strongly negates the possibility

of illegal drug use.

81.    The Hair Test used by Defendants is discriminatory in its nature and its effect and has had, and continues to have, a disparate, adverse, and discriminatory impact on police officers and applicants of color.

82.    Upon information and belief, alternative testing methods and procedures exist that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment, but Defendants have failed and refused to utilize them.

83.    Because of Defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test, Plaintiff has been stripped of his livelihood, suffered the loss of compensation, benefits, seniority, and opportunities for employment and promotion, seen his reputation and career destroyed, been forced to endure an investigation of his state license, and endured humiliation, loss of standing in the community, and extreme emotional distress.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 2000E *ET SEQ.***
**(DISCRIMINATION ON THE BASIS OF RACE)**
**AGAINST CITY OF WOODSTOCK**

84.    Plaintiff repeats and re-alleges the facts contained in the foregoing paragraphs.

85.     Plaintiff is a member of a class protected by 42 U.S.C. § 2000e and is qualified for employment by the Woodstock Police Department.

86.     As alleged above, Plaintiff has satisfied the necessary administrative prerequisites to the filing of a civil action asserting claims arising under 42 U.S.C. § 2000e.

87.     As alleged above, Defendants have failed and refused to: (a) review service records that show no indication of illegal drug use; and (b) use alternative methods and procedures with respect to drug testing in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color.

88.     As alleged above, Defendants' policies, customs, practices, and conduct (including intentional conduct) with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions constitute unlawful discrimination on the basis of race against Plaintiff, in violation of 42 U.S.C. § 2000e and also constitute part of Defendants' pattern and practice of discrimination on the basis of race, including but not limited to the following: (a) the use of a mandatory drug test (the Hair Test) that discriminates against employees an applicants on the basis of race; (b) the disparate, adverse, and discriminatory alteration of the terms and conditions of Plaintiff's employment; (c) the failure and refusal to use

14

alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment.

89.    As alleged above, Plaintiff has suffered and continues to suffer injuries and damages as a result of Defendants' policies, customs, practices and conduct, for which Defendants are liable under 42 U.S.C. § 2000e in an amount to be proven at trial, including compensatory damages, back pay with interest, front pay, sick leave, disability leave, vacation leave, reimbursement for all lost compensation, seniority, Social Security, pre-judgment interest, and all other entitlements provided by 42 U.S.C. § 2000e.

## COUNT II
### VIOLATION OF 42 U.S.C. § 1981 THROUGH 42 U.S.C. § 1983
### (DISCRIMINATION ON the Basis of Race)
### Against All Defendants

90.    Plaintiff repeats and re-alleges the facts contained in the foregoing paragraphs.

91.    Plaintiff is a member of a class protected by 42 U.S.C. § 1981.

92.    At all relevant times, Defendants acted under color of state law with respect to their policies, customs practices, and conduct (including intentional conduct) concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

93.     As alleged above, Defendants have a policy, custom, and practice of failing and refusing to: (a) give any meaningful consideration to service records that show no indication of illegal drug use; and (b) use alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color.

94.     As alleged above, Defendants' policies, customs, practices, and conduct (including intentional conduct) constitute unlawful discrimination on the basis of race against Plaintiff with respect to: (a) the making, performance, modification, and termination of contracts, (b) the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, and (c) the enjoyment of the full and equal benefit of all laws as enjoyed by white citizens, as guaranteed by 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

95.     As alleged above, Defendants' policies, customs, practices, and conduct (including intentional conduct) have, among other things, damaged the good name, reputation, honor, and integrity of Plaintiff, lowered Plaintiff's standing in the community, deprived Plaintiff of employment and related compensation and benefits; and foreclosed employment opportunities for Plaintiff.

96.     As alleged above, Plaintiff has suffered and continues to suffer injuries and damages as a result of Defendants' policies, customs, practices, and

conduct, for which Defendants are liable under the provisions of 42 U.S.C. § 1981 and 42 U.S.C. § 1983  in an amount to be proven at trial, including compensatory and punitive damages in the full amount permitted by law.

**COUNT III**
**VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT EQUAL PROTECTION Clause (Discrimination on the Basis of Race)**
**Against All Defendants**

97.     Plaintiff repeats and re-alleges the facts contained in the foregoing paragraphs.

98.     At all relevant times, Defendants acted under color of state law with respect to their policies, customs, and practices, and conduct (including intentional conduct) concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

99.     As alleged above, Defendants have a policy, custom, and practice of failing and refusing to: (a) give any meaningful consideration to service records that show no indication of illegal drug use, and (b) use alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants  of color in the terms and conditions of their employment,  as compared with other, similarly situated Woodstock Police Department employees and applicants.

17

100.   As alleged above, Defendants' policies, customs, practices, and conduct concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions constitutes intentional discrimination on the basis of race against Plaintiff, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Equal Protection Clause.

101.   As alleged above, Defendants' policies, customs, practices, and conduct have, among other things, damaged the good name, reputation, honor, and integrity of Plaintiff, lowered Plaintiff's standing in the community, deprived Plaintiff of employment and related compensation and benefits, forced Plaintiff to endure an investigation of his state license, and foreclosed employment opportunities for Plaintiff.

102.   As alleged above, Plaintiff has suffered and continues to suffer injuries and damages because of Defendants' policies, customs, practices, and conduct, for which Defendants are liable under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial.

### COUNT IV
### DISPARATE IMPACT DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000E
### (DISCRIMINATION ON THE BASIS OF RACE)
### AGAINST CITY OF WOODSTOCK

103.   Plaintiff repeats and re-alleges the facts contained in the foregoing paragraphs.

18

104.   Plaintiff is a member of a class protected by 42 U.S.C. § 2000e and is qualified for employment by the Woodstock Police Department.

105.   As alleged above, Plaintiff has satisfied the necessary administrative prerequisites to the filing of a civil action asserting claims arising under 42 U.S.C. § 2000e.

106.   At all relevant times, Defendants used particular employment practices, including but not limited to Hair Testing, in making employment decisions.

As alleged above, Defendants' policies, customs, practices, and conduct (including intentional conduct) with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions constitute unlawful discrimination on the basis of race against Plaintiff, in violation of 42 U.S.C. § 2000e and also constitute part of Defendants' pattern and practice of discrimination on the basis of race, including but not limited to the following: (a) the use of a mandatory drug test (the Hair Test) that discriminates against employees an applicants on the basis of race, (b) the disparate, adverse, and discriminatory alteration of the terms and conditions of Plaintiff's employment, (c) the failure and refusal to use alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and

conditions of their employment.

107.   The above-pled differences in the terms and conditions of employment for Woodstock Police Department's employees of color constitutes unlawful disparate impact discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a), (k).

108.   This disparate impact is caused in part by and reinforced by Woodstock Police Department's insistence on the unlawful use of Hair Testing for drug testing.

109.   Woodstock Police Department's sole use of Hair Testing in its drug testing policies is not consistent with business necessity.

110.   Even if Woodstock Police Department's use of Hair Testing was job related or consistent with business necessity, there exist alternative drug testing methods that would meet Woodstock Police Department's goals without producing and adverse effect on employees of color.

111.   Pursuant to Title VII and the statutes providing for relief under Title VII, Plaintiff is entitled to equitable relief for Defendants' disparate impact discrimination against him, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, declaratory and injunctive relief, and reasonable attorney's fees and costs of litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the

following relief be granted:

A.      That the Court take jurisdiction of this matter;

B.      That process be served;

C.      That the Court grant Plaintiff a declaratory judgment that Defendants have engaged in unlawful race discrimination;

D.      That the Court award Plaintiff his back pay and lost economic benefits of employment, including interest, and front pay in an amount to be determined at the trial of this case;

E.      That the Court award Plaintiffs non-economic compensatory damages in an amount to be determined by the trier of fact;

F.      That the Court award Plaintiff punitive damages against Defendant Moss in an amount to be determined by the trier of fact;

G.      That the Court award Plaintiff his costs of litigation in this action and his reasonable attorney's fees;

H.      That the Court enter a permanent injunction forever prohibiting Defendant City of Woodstock from using the employment practices complained of herein and thereby preventing further discrimination against employees of color;

I.      That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

J.      That the Court grant such additional monetary and equitable relief as the

Court deems proper and just.

Respectfully submitted this 8th day of February 2021.

By:     **Lance J. LoRusso**
        Georgia Bar No. 458023
        lance@lorussolawfirm.com

LoRusso Law Firm, P.C.
1827 Powers Ferry Road SE
Building 8 Suite 200
Atlanta, GA 30339
770-644-2378

By:     **Cheryl B. Legare**
        Georgia Bar No. 038553
        cblegare@law-llc.com

Legare Attwood & Wolfe LLC
125 Clairemont Avenue Suite 380
Decatur, GA 30030
470-823-4000

Attorneys for Plaintiff